IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

WILLIAM DAVID JONES,
    Plaintiff,

        v.                              Civil No. 3:23cv514 (DJN)

CARLOS DEL TORO,
    Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Secretary of the Navy Carlos Del Toro's ("Defendant") Motion to Dismiss the Amended Complaint, ("Motion to Dismiss," ECF No. 38). This matter also comes before the Court on *pro se* Plaintiff William David Jones's ("Plaintiff" or "Jones") Motion for Reconsideration Under FRCPs 59 and 60 in Light of the Supreme Court's Definition of Supervisor, ("Motion for Reconsideration," ECF No. 41), and Plaintiff's Motion to Strike ECF No. 39 and Defendant's Motion to Dismiss, ("Motion to Strike," ECF No. 43). For the foregoing reasons, the Court will GRANT Defendant's Motion to Dismiss, (ECF No. 38), DENY Plaintiff's Motion for Reconsideration, (ECF No. 41), and DENY Plaintiff's Motion to Strike, (ECF No. 43).

## I.    BACKGROUND

### A.    Factual Background

At this stage, the Court must accept as true the facts set forth in the Amended Complaint (ECF No. 35). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Against this backdrop, the Court accepts the following facts as alleged for purposes of resolving the instant Motion to Dismiss.

Plaintiff alleges that his former employer, the Department of the Navy ("Navy"), discriminated against him and "committed prohibited personnel practices as defined by [5 U.S.C.

§ 2302] by taking a personnel action (removal) against Jones that it was not authorized to do."
(Am. Compl. ¶ 29.)

Pointing to the range of discriminatory practices that incur Title VII liability, the
Amended Complaint alleges that "[r]eprisal and [r]etaliation apply directly," adding that
Plaintiff's "agency decided to 'look the other way' regarding Religious Discrimination in Jones'
EEO filing against an agency employee, but the effects of that filing play a part in Reprisal and
Retaliation." (*Id.* ¶ 31.) Plaintiff alleges that he filed a religious discrimination equal
employment opportunity ("EEO") complaint with the Navy "on or about 20 December 2020 and
27 January 2021 as a result of observations stemming from the interactions between Lt Col
Oscar Alanis and a Federal Contractor, Ms. Jessica Johnson." (*Id.* ¶ 32.) Though the Navy
dismissed Plaintiff's complaint in March 2021, "its effects had a prolonged and pronounced
effect on the supervisor-employee relationship between Jones and Alanis." (*Id.*) Plaintiff also
alleges that "key employees" in the Navy failed to provide him with "critical information" and
thereby prevented him "from being fully engaged in meaningful work at any level," "promoted a
hostile working environment" and "used a pre-existing condition as a component for terminating
Jones." (*Id.* ¶ 43.)

Recounting various events from his tenure with the Navy, Plaintiff discusses his
difficulties accessing Marine Corps Base Quantico ("MCBQ") (the site of his Navy job) on
account of his November 2018 debarment from entering the United States military installation
known as the Defense Supply Center, Richmond ("DSCR"). (*Id.* ¶¶ 52–58.) Plaintiff states that
the Defense Logistics Agency ("DLA") barred him from entering DSCR after he resigned from
his DLA position, and that he subsequently encountered trouble getting past security personnel at
MCBQ when he worked for the Navy. (*Id.* ¶¶ 52–58, 71, 94.)

2

Plaintiff next overviews the EEO complaint proceedings, stating that in a December 2020 conversation that Plaintiff overheard, Alanis expressed surprise to a support contractor at her Jewish ancestry, allegedly stating "You're Jewish?  But your last name is Johnson; Johnson is not a Jewish name." (*Id.* ¶ 62.)  Plaintiff "could see the anger on" the support contractor's face in reaction to Alanis' comment and, because Plaintiff himself was "heavily bothered by the event," he reported the incident to the MCBQ EEO office in December 2020. (*Id.* ¶ 62–63.)  The MCBQ EEO office dismissed his complaint in March 2021. (*Id.* ¶ 68.)

Plaintiff delineates multiple evaluation meetings that he participated in with Alanis, including meetings in January and February 2022 in which Alanis provided Plaintiff with mixed feedback. (*Id.* ¶¶ 79–81.)  Plaintiff then received a letter in June 2022, assigning him to work for another MCBQ-based Navy employee, Caroline Bloom, on a time-limited detail, and he learned that he had received a performance bonus. (*Id.* ¶¶ 88–89.)  In August 2022, Plaintiff emailed Navy personnel to inform them that his neighbor was suing him, and later learned that Bloom forwarded Plaintiff's email to Lt. Col. Alanis and another superior with the statement "Regarding our earlier conversation . . . ."  Plaintiff subsequently learned that the detail moving him under Ms. Bloom's supervision "ha[d] been made permanent." (*Id.* ¶ 93.)  Following day-by-day commentary regarding early September 2022, Plaintiff then notes that he received his Notice of Termination on September 9, 2022. (*Id.* ¶¶ 93–99.)

Plaintiff proceeds to lay out what he characterizes as "Claims for Relief," starting with "Claim 1:  Jones' Supervisors Failed to Provide Jones with a Path to Advancement to the Target Level, GS-14." (*Id.* ¶¶ 104–11.)  Here, Plaintiff alleges that Lt. Col. Alanis and other Navy superiors failed to provide Plaintiff with meaningful work and did not respect his contributions or give him needed guidance. (*Id.*)  The Amended Complaint's "Claim 2" makes similar allegations, stating that Lt. Col. Alanis prevented Plaintiff from engaging in work that

3

corresponded with his role as an operations research analyst and claiming that Alanis "ensured that Jones was not promoted to [the] GS-14" federal employee pay level as "[r]eprisal against Jones for filing the EEO complaint" against Alanis and as an expression of "personal animus" for Plaintiff filing prior EEO filings against DLA in connection with his debarment from the DLA facility. (*Id.* ¶¶ 112–20.)  Plaintiff states that he filed a civil action in a federal district court regarding his debarment from entering DSCR, claiming that the "chain of command was aware of" this civil action, that this situation qualified as a "pre-existing condition" and that "actions taken because of them are prohibited by law." (*Id.* ¶ 120.)  Alanis allegedly held "personal animus regarding the incidents that Jones faced at the entrance gates to MCBQ." (*Id.*)

The Amended Complaint's "Claim 3" alleges that the Navy "promoted a hostile working environment" through Alanis' comments about a support contractor's religion, the EEO office's dismissal of Plaintiff's EEO complaint about these comments and Alanis' negative behavior toward Plaintiff. (*Id.* ¶¶ 121–28.)  Next, "Claim 4" reiterates Plaintiff's contention that the Navy used his "pre-existing condition" of having been barred from the DSCR military facility as a reason for terminating him from the Navy. (*Id.* ¶¶ 129–36.)

### B.   Procedural History

The Court received this case via transfer from the United States Court of Appeals for the Federal Circuit on August 10, 2023. (ECF No. 1.)  On December 22, 2023, the Court issued an Order, (ECF No. 33), and accompanying Memorandum Opinion, (ECF No. 32), granting Defendant's Motion for Partial Summary Judgment and Motion to Dismiss, (ECF No. 19).  The Court affirmed the Merit Systems Protection Board's ("MSPB") jurisdictional decision dismissing Plaintiff's administrative appeal of his termination from the Navy, dismissed without prejudice Plaintiff's Title VII retaliation claim with leave to amend within fourteen (14) days and denied as moot Plaintiff's motion for a jury trial. (ECF No. 33.)  The Court notified Plaintiff

4

"that should he wish to appeal [the] Order, written notice of the appeal must be filed within thirty (30) days of the entry" of the Order, *i.e.*, by January 21, 2024. (*Id.*)

On January 8, 2024, Plaintiff filed his Appeal of Decision Under FRCPs 59 and 60, (ECF No. 34), in which he requested that the Court vacate its December 22, 2023 Order and either provide him with a hearing and trial or directly grant him "full relief." (*Id.*) Because Plaintiff cited to Federal Rules of Civil Procedure 59 and 60, the Court liberally construed Plaintiff's filing as, in part, a Motion for Reconsideration of the Court's December 22, 2023 Order, and also as a timely Notice of Appeal, which the Court transmitted to the Fourth Circuit. (ECF No. 36); *see United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (holding that "courts must liberally construe the claims of *pro se* litigants"). The Court correspondingly denied Plaintiff's original Motion for Reconsideration, informing Plaintiff that the Court had nonetheless docketed his filing as a timely Notice of Appeal and had transmitted his Notice of Appeal to the Fourth Circuit. (ECF No. 40.)

Plaintiff also filed, contemporaneously with and in the same document as his "Appeal of Decision Under FRCPs 59 and 60," his Amended Complaint, bringing a claim under Title VII of the Civil Rights Act of 1964. (ECF No. 35.) On January 22, 2024, Defendant filed the pending Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6), along with a Memorandum in Support. (ECF Nos. 38–39.)

On February 12, 2024, Plaintiff filed his Motion for Reconsideration, (ECF No. 41). In that same filing, Plaintiff submitted what he styled as his "Reply to Defendant's Motion to Dismiss," (ECF No. 42), and his Motion to Strike, (ECF No. 43). Consistent with the Court's duty to liberally construe *pro se* litigants' filings, *Wilson*, 699 F.3d at 797, the Court deems Plaintiff's "Reply," (ECF No. 42), to constitute a timely Response in Opposition to the Motion to

Dismiss. The Government replied on February 20, 2024, (ECF No. 44), rendering the Motion to Dismiss ripe for review.[1]

## II.     STANDARD OF REVIEW

### A.     Motion for Reconsideration

"[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). The Fourth Circuit has recognized three grounds for relief under Rule 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).

A party seeking relief under Federal Rule of Civil Procedure 60(b) must make a threshold showing of "timeliness, a meritorious [claim or] defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (quoting *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)). Furthermore, a litigant cannot use Rule 60(b) simply to request "reconsideration of legal issues already addressed in an earlier ruling." *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 (4th Cir. 1995) (citing *United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982)).

### B.     Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve factual contests,

---

[1]     Within his reply, Defendant also briefly addressed the Motion to Strike and Plaintiff's second Motion for Reconsideration. (Def.'s Reply Br. (ECF No. 44) ("Def.'s Reply") at 2 n.1.) The Motion to Strike and Motion for Reconsideration now stand ripe for review, as well.

determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations in the complaint as true and views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under Federal Rule of Civil Procedure 8(a), a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *White v.*

7

*CMA Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). When a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the court applies a standard patterned on Rule 12(b)(6) and assumes the truthfulness of the facts alleged in the complaint. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). And relevant here, Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price–Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001).

Lastly, it is well established that district courts must liberally construe a *pro se* litigant's complaint. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). However, courts need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* As the Fourth Circuit explained, "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

## C.    Motion to Strike

Federal Rule of Civil Procedure 12(f) allows a district court, by motion of a party or on its own initiative, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 7(a) defines pleadings as a complaint, an answer to a complaint, an answer to a counterclaim or crossclaim, a third-party complaint, an answer to a third-party complaint and "if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). By omission from Rule 7(a), motions, briefs and affidavits necessarily do not constitute pleadings. *Id.*; *see Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785

F. Supp. 2d 502, 516 n.8 (E.D. Va. 2011) (distinguishing motions from pleadings); *Int'l Longshoremen's Ass'n Steamship Clerks Local 1624 v. Va. Int'l Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995) [hereinafter *Int'l Longshoremen's Ass'n*] (citations omitted) ("Briefs and affidavits, however, are not pleadings.").

Courts typically construe a Rule 12(f) motion to strike as "an improper procedural tool for striking another motion" or other filings that do not qualify as pleadings. *Nationwide Mut. Ins. Co.*, 785 F. Supp. 2d at 516; *see also Structural Concrete Prods., LLC v. Clarendon Am. Ins. Co.*, 244 F.R.D. 317, 321 (E.D. Va. 2007) ("[I]t is not proper under [Rule] 12(f) to make a motion to strike a motion."); *Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, 2008 WL 11379924, at *4 (E.D. Va. May 23, 2008) ("Thus, in plain terms Rule 12(f) cannot be used to strike an affidavit and is not a proper way to challenge the declaration of [a witness]."); *Int'l Longshoremen's Ass'n*, 904 F. Supp. at 504 (finding that Rule 12(f) motion to strike constituted improper procedural grounds to strike reply brief and accompanying affidavits). While courts in this District have, on occasion, considered such procedurally improper motions to strike on the merits, "when specifically confronted with the issue, [this] Court has held that a party's brief [or motion or affidavit] is not a pleading under the Federal Rules of Civil Procedure, and is therefore not subject to a motion to strike under Rule 12(f)." *James v. Experian Info. Sols., Inc.*, 2014 WL 29041, at *6 (E.D. Va. Jan. 2, 2014) (citing *Int'l Longshoremen's Ass'n*, 904 F. Supp. at 504).

### III.   ANALYSIS

#### A.   Motion to Strike

First, the Court will DENY Plaintiff's Motion to Strike, (ECF No. 43). As noted above, this Court has held that a party's brief or motion does not qualify as a pleading under the Federal Rules of Civil Procedure and therefore cannot be subject to a motion to strike under Rule 12(f).

9

*Experian Info. Sols., Inc.*, 2014 WL 29041, at \*6; *Int'l Longshoremen's Ass'n*, 904 F. Supp. at 504. Accordingly, the Court will summarily DENY Plaintiff's Motion to Strike, (ECF No. 43).

### B.   Motion for Reconsideration

The Court next turns to Plaintiff's Motion for Reconsideration, (ECF No. 41). Having already rejected Plaintiff's first Motion for Reconsideration by Memorandum Order on January 31, 2024, (ECF No. 40), the Court correspondingly will DENY his second such motion.

Plaintiff argues that the Court should reconsider and vacate its December 22, 2023 Order, (ECF No. 33), affirming the MSPB's jurisdictional decision dismissing Plaintiff's administrative appeal on the grounds that he constituted a probationary employee. Pointing to the Supreme Court's holding in *Vance v. Ball State University*, 570 U.S. 421 (2013), Plaintiff contends that binding precedent forecloses the possibility that Lt. Col. Alanis, the officer who sent Plaintiff his Notice of Termination, qualified as his legitimate "supervisor" upon his termination. (Mot. for Reconsideration (ECF No. 41) at 11–14.) In *Ball State*, the Supreme Court held that an employee constitutes a supervisor "for purposes of vicarious liability under Title VII only if he or she is empowered by the employer to take tangible employment actions against the victim," with a "tangible employment action" meaning "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ball State*, 570 U.S. at 421. Plaintiff argues that as the Supreme Court "has issued the ultimate definition of the term, 'supervisor,' a reasonable person would conclude that Lt. Col. Alanis, who failed all components of the test 'supervisor,' did not have the authority to terminate Jones." (Mot. for Reconsideration at 14.)

But *Ball State* did not concern an administrative appeal from the MSPB; rather, that case concerned whether Title VII liability could attach to an employer for creating a hostile work

environment and retaliation on the basis of behavior by the plaintiff's co-worker who did *not* qualify as her "supervisor." *Ball State*, 570 U.S. at 421–22. Far from establishing a sweeping definition of who constitutes an appropriate "supervisor" in all statutory and regulatory contexts, that case therefore fashioned a definition for the narrow purpose of vicarious liability under Title VII. To extrapolate from *Ball State* that the Supreme Court has decided who can and cannot qualify as a "supervisor" for terminating a probationary employee in the federal workforce in all legal circumstances would stretch far beyond the bounds of that particular ruling. *Ball State* is thus inapposite here.

As noted above, reconsideration amounts to "an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403. Plaintiff identifies no intervening change in controlling law or new, previously unavailable evidence, failing to satisfy the first two grounds for relief under Rule 59(e). *Hutchinson*, 994 F.2d at 1081. And aside from his irrelevant discussion of *Ball State*, Plaintiff does not present any argument about a "clear error of law," nor does he plausibly contend that reconsideration must happen to "prevent manifest injustice." *Id.* Indeed, the Court already considered Plaintiff's emphasis on who qualified as his "supervisor" in its December 22, 2023 Memorandum Opinion, concluding that the MSPB correctly applied the law in dismissing Plaintiff's case on jurisdictional grounds. (ECF No. 32 at 10–13); *see also CNF Constructors*, 57 F.3d at 401 (litigants cannot use Rule 60(b) to request "reconsideration of legal issues already addressed in an earlier ruling").

Accordingly, the Court will DENY Plaintiff's Motion for Reconsideration, (ECF No. 41). Plaintiff has now filed two consecutive Motions for Reconsideration of the Court's December 22, 2023 Order affirming the MSPB's jurisdictional decision dismissing Plaintiff's administrative appeal. The Court therefore takes this opportunity to remind Plaintiff that the

11

Court liberally construed his "Notice of Appeal," (ECF No. 34), interpreting this filing as, in part, a manifestation of Plaintiff's intent to appeal the Court's December 22, 2023 Order to the Fourth Circuit within the thirty-day timeframe that the Court provided, (ECF No. 33). Plaintiff's appeal of the Court's Order affirming the MSPB's jurisdictional decision therefore now lies with the Fourth Circuit. Absent extraordinary circumstances, the Court will not entertain any additional Motions for Reconsideration of this issue.

### C.     Motion to Dismiss

The Court next turns to Defendant's Motion to Dismiss, (ECF No. 38). The Court first addresses Defendant's argument that the Amended Complaint should be dismissed for failure to comply with procedural requirements before turning to the substantive arguments.

#### 1.     Timeliness

In support of the Motion to Dismiss, Defendant first argues that the Court should dismiss the Amended Complaint as untimely, because Plaintiff made his filing on January 8, 2024, rather than the January 5, 2024 deadline set by the Court's prior Order. (Mem. in Supp. of Mot. to Dismiss (ECF No. 39) ("Def.'s Mem.") at 7.) Federal Rule of Civil Procedure 41(b) permits a defendant to move for dismissal of an action if a plaintiff fails to prosecute or comply with the Federal Rules of Civil Procedure or any order of the Court. Moreover, although the Court liberally construes *pro se* pleadings, *pro se* parties "are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *McNeil v. United States*, 508 U.S. 106, 113 (1993). However, the Amended Complaint states that Plaintiff did not receive the Court's December 22, 2023 Memorandum Opinion and Order, (ECF Nos. 32–33), as of January 3, 2024, and that Plaintiff only learned about those decisions by logging into the PACER online portal. (Am. Compl. 55.) Accordingly, the Court exercises its discretion to deem the Amended Complaint as timely filed.

12

### 2.    Rule 8

Second, Defendant argues that the Amended Complaint fails to comply with Federal Rule of Civil Procedure 8(a), which stipulates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." (Def.'s Mem. at 7–8.) Indeed, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  To Defendant, the Amended Complaint comprises "a dense morass of irrelevant legal conclusions and arguments, often untethered to fact or law," tying together "perceived workplace grievances encompassing a wide range of events" that do not amount to a valid Title VII retaliation claim. (*Id.* at 8–9.)

While the Amended Complaint undoubtedly "is not a model of clarity," relying on this observation alone to justify dismissal of a *pro se* action for failure to comply with Federal Rule 8(a) "is unwarranted." *Wilson v. Loancare LLC*, 2019 WL 13301155, at *5 (E.D. Va. Feb. 11, 2019).  And though the Amended Complaint's "length and complexity" cuts against surviving Rule 8(a) scrutiny, Plaintiff's *pro se* status, and the fact that the Amended Complaint appears sufficiently clear as to instruct Defendant on how to defend against the pleading, support a finding that Plaintiff clears the Rule 8(a) bar. *See Carter v. Virginia Dep't. of Game & Inland Fisheries*, 2018 WL 3614975, at *4 (E.D. Va. July 27, 2018) (citing *North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) and noting that courts balance these various factors in Rule 8(a) analysis).  Although he takes a meandering road, Plaintiff nonetheless grounds his Title VII retaliation claim in the principal allegation that Navy personnel took adverse employment actions against him due to Lt. Col. Alanis's "personal animus" against Plaintiff for, among other actions, filing an EEO complaint against Alanis.  (Am. Compl. ¶¶ 112–20.)

In sum, although far from a paragon of concision, the Amended Complaint does not fall to the level of being so unintelligible as to fail Rule 8(a).  *See U.S. Health, Inc. v. Cohen*, 838

F.2d 468 (4th Cir. 1988) (noting that "the sole purpose of Rule 8 pleading is to give notice sufficient to advise the other party of the event being sued upon").

### 3.      Rule 12(b)(6)

Third, Defendant contends that Plaintiff fails to plausibly allege a causal relationship between his EEO complaints and the Navy's termination of him, necessitating the dismissal of his Title VII retaliation claim.[2]  To state a claim for retaliation, Plaintiff must plausibly allege that (1) he "engaged in a protected activity"; (2) "the employer acted adversely against" him; and (3) "a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).  Plaintiff must state sufficient facts to support an allegation that the adverse employment action stemmed from discrimination; otherwise, discrimination allegations do not rise above the level of speculation. *Salagh v. Va. Int'l Univ.*, 2017 WL 976620, at *4 (E.D. Va. Mar. 13, 2017).

As to the first prong, Plaintiff plausibly alleges that he engaged in a protected activity, *i.e.*, filing an EEO complaint against Alanis. (Am. Compl. ¶¶ 62–68); *see Smith v. CSRA*, 12 F.4th 396, 415 (4th Cir. 2021) (concluding that plaintiff established a *prima facie* case of retaliation where she engaged in protected activity that included filing an EEO complaint).

On the second prong, Plaintiff devotes much of the Amended Complaint to a play-by-play recounting of his difficult relationship with his then-supervisor, Lt. Col. Alanis, and Alanis's criticism of his work product and office behavior.  These allegations, standing alone, do

---

[2]      As a threshold matter here, the parties dispute the impact of Defendant incorrectly citing the wrong docket number for the MSPB administrative record of Plaintiff's case, with Plaintiff making much of this mistaken citation. (Pl.'s Opp. to Mot. to Dismiss (ECF No. 42) ("Pl.'s Opp.") at 15–17; Def.'s Mem. at 3.)  As Defendant explains, this incorrect citation constituted a benign scrivener's error, and Plaintiff's consultation of the docket filing at issue — ECF No. 20-1 — would have pointed him to the proper MSPB administrative record.  The Court therefore declines to find that this harmless citation mistake holds any weight here.

not suffice to show that the Navy acted "adversely" toward him. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (holding that an "adverse employment action" qualifies as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Nonetheless, Plaintiff plausibly alleges two actions that *do* fall under the *Hoyle* scope: (1) Alanis "ensured that Jones was not promoted to [the] GS-14" federal employee pay level as retaliation for the EEO complaint against Alanis and as an expression of "personal animus" for Plaintiff filing prior EEO filings against DLA, (Am. Compl. ¶¶ 112–20); and (2) the Navy's termination of Plaintiff in September 2022, which he characterizes as Alanis's "right moment to exact his vengeance for filing the EEO complaint against Jones," (*id.* ¶ 145). Plaintiff therefore clears the second prong for a Title VII retaliation claim.[3]

---

[3]     Plaintiff also alleges that his detail assignment in June 2022 to a different branch of the MCBQ headquarters staff "resulted from," in part, "[r]eprisal against Jones for filing the EEO complaint against Lt Col Alanis"; "[r]eprisal against Jones for disagreeing with Lt Col Alanis about the defined role of an operations research analyst"; Alanis's "personal animus" against Plaintiff for filing EEO complaints against DLA regarding Plaintiff's debarment from the DLA facility; and Alanis's "personal animus regarding the incidents" that Plaintiff faced at the MCBQ entrance gates. (Am. Compl. ¶¶ 108, 120.)  Neither Plaintiff's difference of opinion with a superior regarding his job's responsibilities, nor Plaintiff's difficulties getting past MCBQ security personnel at the front gates, qualify as a "protected activity." *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) ("Protected activities fall into two distinct categories:  participation or opposition.  An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace."); *see also Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018) (noting that "protected activity" can take numerous forms, all of which concern opposition to an employer's alleged discriminatory conduct).  Furthermore, Plaintiff fails to show that his detail assignment to Bloom constituted a "reassignment with significantly different responsibilities." *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) ("The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action," as a "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect."); *see also Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir. 1999) ("[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment

15

On the third prong, however, Plaintiff faces fatal problems, because he fails to plausibly allege "a causal connection between the protected activity and the asserted adverse action." *Ziskie*, 547 F.3d at 229.  The Court reaches this conclusion after examining both of the adverse actions that the Navy allegedly took:  preventing Plaintiff's promotion to the GS-14 pay level and terminating him.

Regarding the first alleged adverse action, Plaintiff claims that Alanis "made the decision to rate Jones at the minimum fully successful mark and made the recommendation not to advance Jones to the full working potential, GS-14," adding that "this was the first opportunity Alanis had to retaliate against Jones" for filing the EEO complaint.  (Am. Compl. ¶ 116.)  The Amended Complaint suggests that Alanis first engaged in this conduct in early 2022, as Plaintiff alleges that at a February 2022 meeting, Alanis admonished Plaintiff that he "was not on a pathway to success for his annual evaluation," (*id.* ¶ 81), and that Plaintiff then received his annual evaluation, dated March 31, 2022, in which "Alanis evaluated Jones as fully successful in each objective area," (*id.* ¶ 82).  In Plaintiff's telling, "Alanis had a very definite opinion of the functions of an operations research analyst" (Plaintiff's Navy job title), and that due to Alanis's "difference of opinion" on this point, he "rarely included Jones in day-to-day meetings" with other analysts, "further isolating Jones."  (*Id.* ¶¶ 108–09.)

As the Court noted in its December 22, 2023 Memorandum Opinion, (ECF No. 32 at 20), the Supreme Court, the Fourth Circuit and this Court have all rejected a delayed adverse action as the basis for a retaliation claim.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that a lack of temporal proximity between the protected activity and retaliatory

---

action even if the new job does cause some modest stress not present in the old position.").
Plaintiff makes no showing that the detail assignment posed a "significant detrimental effect," so the failure-to-promote and termination issues constitute the only plausible "adverse actions."

16

conduct suggests "no causality at all"); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (explaining that "three to four months" constitutes an overly lengthy delay to establish causality); *Harris v. Wormuth*, 2023 WL 6149071, at *6 (E.D. Va. Sept. 20, 2023) (describing the delay between plaintiff's EEO complaint and adverse actions as particularly "fatal" to a retaliation claim, when the adverse actions came five months and twenty months after plaintiff filed the EEO complaint).

Here, Plaintiff attempts to establish a causal link between his December 2020 lodging of an EEO complaint — which the MCBQ EEO office dismissed in March 2021 — with Alanis's alleged actions (that apparently began in February 2022) to ensure that Plaintiff did not receive a promotion to the GS-14 pay level. (Am. Compl. ¶¶ 68, 81.)  But while Plaintiff portrays Alanis's actions in early 2022 as "the first opportunity Alanis had to retaliate against Jones" for filing the EEO complaint, (*id.* ¶ 116), he nonetheless states that Alanis told him during his October 2021 midyear assessment that Plaintiff was "on-track for a fully successful evaluation," albeit with some critical feedback, (*id.* ¶ 77).  Moreover, he provides the following details regarding the time period between the March 2021 dismissal of his EEO complaint against Alanis and the February 2022 meeting during which Alanis informed Plaintiff that he was "not on a pathway to success for his annual evaluation":

- "Jones receives notification through Lt Col Alanis and an SF-50 that he has been awarded a performance bonus in July of 2021";

- Plaintiff informed Alanis of his civil case in Chesterfield County in October 2021, and Alanis "shrugged it off";

- Alanis took no action after Plaintiff encountered difficulty getting past the MCBQ front gates in October 2021;

- Alanis held the October 2021 midyear evaluation meeting with Plaintiff, during which he informed Plaintiff that he was "on-track for a fully successful

evaluation, but also discusses that certain evaluation criteria did not have many accomplishments";

- In November 2021, Alanis spoke with Plaintiff about a conversation that Plaintiff participated in with coworkers that sparked an email from a coworker to Alanis expressing concern about particular comments by Plaintiff, and "[n]o other immediate action is taken after Jones relates the contents of the conversation";

- In January 2022, Alanis met with Plaintiff to discuss his future annual evaluation, informing him that "certain evaluation areas are too sparsely populated for Jones to receive a fully successful evaluation."

(Am. Compl. ¶¶ 70–79.)  Altogether, while the above instances illustrate some tension between Plaintiff and Alanis, they hardly reveal "evidence of recurring retaliatory animus during the intervening period" between the dismissal of Plaintiff's EEO complaint and Alanis's critical comments in early 2022 to Plaintiff regarding the completion of his annual evaluation. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).  Indeed, even if the Court were to liberally construe Alanis's comment in October 2021 that Plaintiff lacked accomplishments in "certain evaluation criteria" as the first action that Alanis allegedly took toward seeking to block Plaintiff's promotion to the GS-14 pay level, this action came *seven months* after the dismissal of Plaintiff's EEO complaint. *See Pascual*, 193 F. App'x at 233 (4th Cir. 2006) (recognizing that "three to four months" constitutes an overly lengthy delay to establish causality).  And the MCBQ EEO office *dismissed* Plaintiff's EEO complaint against Alanis in March 2021; this date does not reflect when Plaintiff actually *engaged* in the protected activity, as the Amended Complaint states that Plaintiff filed his EEO complaint in December 2020.  (Am. Compl. ¶ 63.)  This elongated time period strikes the Court as insufficient to plausibly allege causality between Plaintiff's filing of an EEO complaint and Alanis's alleged efforts to block Plaintiff's promotion to the GS-14 level.

Plaintiff does not even claim that he qualified as *eligible* for a GS-14 level promotion in early 2022, when Alanis allegedly exercised his "first opportunity" to exact revenge on Plaintiff

18

for filing the EEO complaint. Instead, he merely takes issue with Alanis's critical comments toward him in multiple meetings, despite conceding that "Alanis evaluated Jones as fully successful in each objective area" in the March 2022 evaluation. (*Id.* ¶ 82.) Even when accounting for the aforementioned events between Plaintiff's EEO complaint and the early 2022 meetings, the Amended Complaint does not plausibly allege a causal link. *Cf. Lettieri*, 478 F.3d at 650 (holding that "continuing retaliatory conduct and animus," including stripping plaintiff of "significant job responsibilities" the month after plaintiff's protected activity and holding discussions — within three months of plaintiff's protected activity — about terminating her, sufficed to show a causal link between protected activity and termination). Alanis's criticisms of Plaintiff, interwoven with generally positive job reviews, fail to plausibly allege that Plaintiff's EEO complaint caused Navy personnel to block him from a GS-14 level promotion.

So too with Plaintiff's termination. Unlike in *Lettieri*, where the defendant company's managerial personnel initiated discussions about firing the plaintiff within three months after she engaged in protected activity, Plaintiff does not plausibly allege that Alanis (either acting alone or in concert with other Navy personnel) started planning to terminate him soon after the December 2020 filing of his EEO complaint. *Id.* Claiming that "Alanis simply had to wait for the right moment to exact his vengeance for filing the EEO complaint," the Amended Complaint contends that Alanis took this opportunity in September 2022 with the aid of his supervisor, Leonard Blasiol, "just before Jones' assumed probationary period was about to expire." (Am. Compl. ¶ 145.) But as outlined above, Alanis's actions in the intervening period between the December 2020 filing of the EEO complaint and Plaintiff's termination in September 2022 fail to qualify as the sort of "continuing retaliatory conduct and animus" that the Fourth Circuit has held sufficient for plausibly showing causation for Title VII retaliation purposes. *Lettieri*, 478 F.3d at 650. Furthermore, the Amended Complaint fails to establish why Blasiol would "allow

19

[Alanis]to terminate" Plaintiff and thereby be "culpable for Jones' illegal termination," (Am. Compl. ¶ 145), as Plaintiff does not plausibly allege that his protected activity triggered a desire for retaliation from *Blasiol*.

Here, then, the Court remains left with the Supreme Court's instruction that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Breeden*, 532 U.S. at 273. Even a three-month delay can be insufficient, while action taken 20 months later "suggests, by itself, no causality at all." *Id.* To be sure, Plaintiff presents ample evidence that he and Alanis tussled numerous times in the years and months leading up to his September 2022 termination. But as Defendant points out, Plaintiff ties himself in knots by highlighting Alanis's multiple acknowledgements of Plaintiff's positive work performance in certain areas before then alleging that retaliatory animus caused his termination. (Def.'s Reply at 5.) Plaintiff appears to misunderstand his pleading burden, asserting that Defendant must "prove that Jones was insubordinate, failed to follow instructions, or had engaged in misconduct," and that "defendant has failed to prove that Lt. Col. Alanis was Jones' supervisor under Title VII." (Pl.'s Opp. at 33–41, 46.) But as *Twombly* held, "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Twombly*, 550 U.S. at 555, 570. With respect to alleged retaliation spurring his termination, Plaintiff fails to meet this bar.[4] In sum, Plaintiff does not clear the third prong of a Title VII retaliation claim: causality.

---

[4] Plaintiff also cannot justify his retaliation claim on the basis of alleged "animus" arising from his difficulties getting past the front gates at MCBQ. As noted above, Plaintiff contends that the Navy used his "pre-existing condition" of having been barred from the DSCR military facility as a reason for terminating him from the Navy. (*Id.* ¶¶ 129–36.) But an individual's

### 4.   Hostile Work Environment

While the Amended Complaint brings a host of purported "claims," the Court only granted Plaintiff leave to amend to bring a Title VII retaliation claim. (ECF No. 33.) Nonetheless, the Court briefly considers Plaintiff's "hostile work environment" allegations and concludes that they do not survive the motion-to-dismiss stage. The Amended Complaint asserts that the Navy "promoted a hostile working environment" through (1) Alanis's comments about the religion of a support contractor; (2) the MCBQ EEO office's dismissal of Plaintiff's EEO complaint about these comments; (3) Alanis's critical comments and directives toward Plaintiff, "because Alanis had a personal animus against Jones stemming from his background as an Army officer"; and (4) Alanis's "disregard" for and "marginalizing" of Plaintiff's workplace contributions. (Am. Compl. ¶¶ 121–28.)

A Title VII hostile-work-environment claim requires a showing of "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Strothers*, 895 F.3d at 328. And as to the third prong, whether conduct qualifies as "sufficiently severe or pervasive" involves "both a subjective and objective component, i.e., the employee must both personally and reasonably believe that the conduct rises to the level of a hostile environment." *Id.* at 331. This finding entails a totality-of-

---

attempt to contest his debarment from a military facility, or to access his workplace after problems have arisen related to the earlier debarment, plainly do not qualify as "protected activities" for Title VII retaliation purposes. Plaintiff's framing of his debarment as a "preexisting condition" perhaps suggests that he may be seeking to bring some sort of disability claim. However, the Court explicitly warned Plaintiff in its December 22, 2023 Order that "leave to amend is granted only with respect to bringing a Title VII retaliation claim before this Court." (ECF No. 33) (emphasis in original). And regardless, even in *pro se* litigant cases, district courts cannot "be required to conjure up and decide issues never fairly presented to them." *Beaudett*, 775 F.2d at 1276.

the-circumstances analysis, including looking at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Here, Plaintiff makes no plausible allegation that any unwelcome conduct arose due to a "protected status" that *he* possessed, because "[t]he second element of a hostile environment claim requires that the offending conduct be based on the employee's 'race, color, religion, sex, or national origin.'" *Id.* at 329. While Plaintiff's status as a former Army officer may have caused tension with his Navy superior, mere inter-branch rivalries within the military do not give rise to liability under federal discrimination statutes.

Plaintiff cites to *Harris v. Forklift*, 510 U.S. 17 (1993), where the Supreme Court held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Id.* at 23. To Plaintiff, the totality of the circumstances points to a hostile work environment, in part due to Alanis allegedly asking a coworker if she was Jewish, stating that he was not aware her surname was Jewish and noting the coworker's religious affiliation to two coworkers. (Am. Compl. ¶¶ 62, 64, 122, 144.) Even if these comments offended Plaintiff, their isolated nature fails to plausibly point to a hostile work environment for Title VII purposes. *Cf. Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) ("[The plaintiff] was subjected every day to some variety of this offensive conduct . . . ."). The totality of circumstances therefore cuts against Plaintiff here, and he fails to plausibly allege a hostile work environment under Title VII.

**V. CONCLUSION**

For the foregoing reasons, the Court will GRANT Defendant's Motion to Dismiss, (ECF No. 38), DENY Plaintiff's Motion for Reconsideration, (ECF No. 41), and DENY Plaintiff's Motion to Strike, (ECF No. 43).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record, notify Plaintiff at his address of record and notify the Fourth Circuit Clerk's Office.

/s/

David J. Novak
United States District Judge

Richmond, Virginia
Dated: March 25, 2024

23